UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-cv-12497-PBS

GEOFFREY TAMMARO and MEGAN TAMMARO,

                  **Plaintiffs**

v.

GARVIN MCHALE, MARK ASSAD, KEVIN SMITH, CHRISTOPHER SIMPSON, and BOSTON POLICE OFF. JOHN DOE,

                  **Defendants.**

## JOINT PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5(d) and the Court's "Order for Pretrial Conference" (Dkt. Nos. 22 and 47), the parties hereby submit this joint pretrial memorandum.

**1.**    *Concise Summary of the Evidence*

    A.    *Plaintiffs' Concise Summary of the Evidence*

Plaintiffs Geoffrey Tammaro (Geoffrey) and Megan Tammaro (Megan) expect the evidence to show that at approximately 1:00 am on Sunday, June 11, 2017, they were walking on Stuart Street in Boston with their friends, Dr. Nati Vasquez (Vasquez) and Dr. Bonnie Arzuaga (Arzuaga), when their attention was drawn to man on the sidewalk who appeared to be in the midst of an opioid overdose. At the time, Geoffrey worked as a nurse in the Emergency Room at Tobey Hospital, alongside Vasquez.

After directing onlookers to call 9-1-1, Vasquez positioned himself at the unknown man's head and checked for a pulse and respirations as per standard basic life-support protocol. Geoffrey went to the individual's left side and prepared to administer chest compressions should they become

1

necessary.

Meanwhile, about a quarter mile away, two frantic females approached Officer Gavin McHale ("McHale") as he sat in the passenger seat of a marked cruiser. They told McHale there was a man in need of assistance down the street. When McHale exited the cruiser to investigate, he left behind a duty bag containing a dose of Narcan.

Upon arriving at 19 Stuart Street, McHale saw the man on the ground and initially ordered Vasquez and Geoffrey to back away. They identified themselves as medical professionals and asked McHale if he possessed any Narcan and/or oxygen. McHale said he did not and started shouting at the gathering crowd in a very aggressive and escalating way. It is anticipated that Arzuaga will testify that McHale made this emergency situation more hectic and more chaotic than it needed to be.

Eventually, Officers Kevin Smith (Officer Smith) and Christopher Simpson (Simpson) arrived at the scene. Simpson had a dose of Narcan and, after assessing the individual on the ground, administered it. Geoffrey knew from his experiences in the ER that it sometimes took more than one dose of Narcan to revive a patient. When the dose Simpson administered failed to revive the man on the ground, Geoffrey asked whether any of the officers possessed a second dose. None did.

Emergency Medical Technicians (EMTs) Brett Johnson and Rachel Smith (EMT Smith) subsequently arrived. Tammaro left the man's side to brief EMT Smith on the man's condition. Vasquez remained at the head of the patient. He expected one EMT to take over keeping the man's head in line with the cervical spine and the other to provide oxygen. When neither of these things happened, Vasquez and Johnson began to argue as to the appropriate next steps in the man's care. As Geoffrey stood off to the side watching, McHale suddenly grabbed him and threw him to the

2

ground. Geoffrey was completely caught off guard by the attack and it took several moments for him to realize his assailant was a police officer. Officer Smith and Simpson aided and abetted McHale's use of excessive force in taking Geoffrey into custody notwithstanding the absence of probable cause for his arrest. Plaintiffs expect that the evidence will show that, during Geoffrey's unlawful seizure and assault by McHale, Officer Smith and Simpson had reason to know that excessive force was being used against a citizen that was being unjustifiably arrested, yet nevertheless ignored the realistic opportunity they had to intervene to prevent the harm from persisting.

These actions by the defendant officers aggravated Geoffrey's pre-existing back injury. The pain he experienced forced Geoffrey to resign from a job he loved and compromised the care he was able to provide to his three small children. Although the charges against Geoffrey were dismissed prior to his arraignment, he suffered considerable anxiety contemplating the potential professional consequences of the false allegations against him. Even as his back improved, his emotional trauma endured. Despite receiving mental health treatment, he became increasingly irritable and less affectionate with Megan and the couple experienced a dramatic reduction in their intimacy.

Watching her husband's beating caused Megan severe distress. The evidence will show she too sought the assistance of mental health professionals for anxiety, major depression, nightmares, and suicidal ideation. In the course of dealing with her depression, Megan gained forty-five pounds and started suffering from joint pain and heart palpitations. In the fall of 2018, Megan accepted a position at Northeastern University but was forced to quit less than a year later and take a lower-paying job closer to home due to the trauma she experienced each time she saw a Boston police cruiser or heard a siren.

Plaintiffs expect to present evidence of special damages pertaining to the cost of retaining counsel to defend against the criminal charges, bills and co-payments for medical, physical therapy, and mental health appointments, and the destruction of Geoffrey's watch.

B.     *Defendants' Concise Summary of the Evidence:*

On June 11, 2017, at approximately 1:15 a.m., Officer McHale was flagged down by two women who told him a man down the street needed assistance. Officer McHale followed the women down the street and came upon a male laying on the ground with a crowd gathered around him. Officer McHale announced himself as a police officer and the crowd thereafter dispersed, except for two men—later identified as Plaintiff Geoffrey Tammaro and his friend, Dr. Vasquez—who were apparently attempting to assist the male on the ground. When Officer McHale approached the male to evaluate him, Tammaro and Vasquez yelled at Officer McHale to immediately "give him some Narcan and oxygen," or words to that effect. Officer McHale immediately sensed that these two men were under the influence.

Officer McHale asked Tammaro and Vasquez to step aside so that he could evaluate the man on the ground. They refused. Vasquez responded by telling Officer McHale that he was an ER physician and that his friend, Tammaro, was an ER nurse. Officer McHale continued his efforts to have Tammaro and Vasquez step aside, to no avail, and radioed for assistance and requested EMTs.

Officers Christopher Simpson and Kevin Smith then arrived on scene. Tammaro and Vasquez again demanded Narcan and oxygen from the newly-arrived officers. Officer Simpson asked the men to move and administered a dose of Narcan. Vasquez demanded another dose, at which point Officer Simpson explained that they did not have anymore and EMTs would be arriving shortly.

4

When EMTs arrived on scene they too asked Vasquez and Tammaro to move so that they could evaluate the male for themselves.  They refused.  Vasquez and Tammaro continued to demand oxygen and Narcan from the EMTs.  The EMTs responded that they needed to evaluate the male for themselves.  EMT Smith, for her part, quickly formed the opinion that Tammaro and Vasquez were under the influence.

At some point after EMTs arrived on scene but while Tammaro and Vasquez were still crowding the man on the ground, Tammaro pushed Officer McHale.  Officer McHale then announced that Tammaro was under arrest.  Tammaro resisted his arrest and was brought down to the ground so that he could be placed in handcuffs.  Officer Simpson and Officer Smith assisted with placing Tammaro in handcuffs.  Tammaro was transported to the police station for booking without further incident.

The Defendants dispute the nature and extent of Plaintiffs' alleged physical and emotional injuries.

**2.**     ***Joint Stipulation of Facts Agreed to By the Parties:***

In the early morning hours of Sunday, June 11, 2017, a Black male began exhibiting symptoms consistent with an opioid overdose while on the sidewalk outside 19 Stuart Street in Boston. The parties to this civil action encountered each other in the course of responding to this medical emergency. Defendants Garvin McHale, Kevin Smith, and Christopher Simpson are Boston police officers and were so employed at all relevant times in this case. It is undisputed that McHale, Smith, and Simpson were acting under the color law as employees of the City of Boston.

3. *Concise Summary of the Contested Issues of Fact*

The parties dispute each other's accounts of their initial interaction. Plaintiffs contend that Vasquez and Geoffrey had extensive training and experience in responding opioid overdoses and were using their medical backgrounds to calmly provide first aid when McHale arrived. Plaintiffs maintain that McHale appeared agitated and started yelling at onlookers creating a tense and adversarial atmosphere. While Plaintiffs admit consuming alcohol earlier in the evening, they deny that Geoffrey or Vasquez were under the influence of alcohol when they began administering first aid. McHale maintains that Geoffrey and Vasquez were inebriated and immediately began barking inappropriate orders at him. McHale denies acting aggressively and asserts his efforts at crowd control were appropriate.

The parties dispute whether Geoffrey's actions interfered with the care provided by first responders. Plaintiffs maintain that Simpson was encouraged to assess the patient prior to administering Narcan and that Geoffrey stepped aside to let EMT Smith tend to the patient after briefing her on the life-saving efforts that preceded her arrival. Defendants contend that the encounter turned physical Geoffrey when attempted to accost the EMTs.

The parties dispute the identity of the first aggressor. Plaintiffs assert that McHale launched an unprovoked attack against Geoffrey. Defendants maintain Geoffrey struck the first blow by pushing McHale.

The parties dispute whether the force used to arrest Geoffrey was reasonable or excessive. Plaintiffs take the position that because McHale was the first and only aggressor, the police had no right to use the force they did – much of which was captured by video and featured multiple strikes by McHale. Plaintiffs further contend that to the extent Geoffrey used force to protect himself during his beating, he was justified in doing so pursuant to *Commonwealth v.*

*Moreira*, 388 Mass. 596, 447 N.E.2d 1224 (1983), and its progeny. Defendants contend the push of McHale made Geoffrey an "assaultive" subject and justified the actions taken to place him into custody.

The parties dispute whether there was a legal basis to properly charge Geoffrey with criminal activity. Plaintiffs contend the defendant officers brought these charges for the improper purpose of covering up their own misconduct. Defendants deny having an improper motive and take the position that there was probable cause for the charges they brought.

**4.**     *Any Jurisdictional Questions*

None.

**5.**     *Any Questions Raised by Pending Motions*

Plaintiffs have moved in limine to preclude defense expert Charles DiChiara from offering testimony vouching for the credibility of McHale on the disputed issue of the first aggressor.

Plaintiff will move in limine to seek the exclusion of evidence from defense witness Darryl Owens on the subject of the defendant officers' training.

Defendants will move in limine to preclude Plaintiffs from calling certain witnesses at trial because their testimony is either needlessly cumulative or certain records have not been produced.

Defendants will also move in limine to preclude Plaintiffs from seeking damages for future lost earnings/lost earning capacity as these damages are too speculative.  By extension, in this motion Defendants will also argue that Plaintiff Geoffrey Tammaro cannot argue that he was disabled as a result of this incident.

Defendants will also move in limine to preclude Plaintiffs from seeking any emotional distress damages beyond garden variety.

Defendants will also move in limine to exclude any evidence, argument, or reference to prior complaints that may be contained in the Defendants' internal affairs or personnel records because this information is not relevant, is unduly prejudicial, and is inadmissible propensity evidence.

**6.** *Concise Summary of the Contested Issues of law, Including Evidentiary Issues*

A number of the defense witnesses in this case were interviewed by the internal affairs division of the Boston Police Department. Transcripts or recordings of these interviews may be used during witness examinations. Plaintiffs suggest that each transcript or recording be referred to as a "prior interview" without disclosing that it was an internal affairs investigation. If the jury learns there was such an investigation, they may improperly speculate regarding the result of the investigation.

**7.** *Probable Length of Trial*

Based on a trial schedule of 9:00 am to 1:00 pm daily, the parties expect the trial will last 8-10 days.

**8.** *Names and Addresses of Potential Witnesses to be Called and Whether the Testimony of any Such Witness is Intended to be Presented by Deposition[1]*

| NAME | CITY OF RESIDENCE | WHETHER TO BE PRESENTED BY DEPOSITION |
|---|---|---|
| Geoffrey Tammaro | Sandwich, MA | No |
| Megan Tammaro | Sandwich, MA | No |
| Bonnie Arzuaga, MD | Sandwich, MA | No |
| Natianel Vasquez, MD | Sandwich, MA | No |
| Jason Hansing | Hudson, MA | No |
| George Tammaro | Durham, CT | No |
| Jacqueline Tammaro | Durham, CT | No |

---

[1] As noted above, there are pending motions in limine regarding whether some of these witnesses may testify.

| | | |
|---|---|---|
| Josh Adams | Forestdale, MA | No |
| Katie Centamore | Plymouth, MA | No |
| Lisa Sinkiewicz | East Bridgewater, MA | No |
| Christopher Lessa | Taunton, MA | No |
| Katie Byrne | Bourne, MA | No |
| Pamela Corrigan | Hyannis, MA | No |
| Kevin Smith | Boston, MA | No |
| Gavin McHale | Boston, MA | No |
| Christopher Simpson | Boston, MA | No |
| Darryl Owens | Boston, MA | No |

Respectfully submitted,

PLAINTIFFS GEOFFREY TAMMARO MEGAN TAMMARO,

By their attorneys,


/s/ Luke Ryan
Luke Ryan, Esq. BBO# 664999
David Hoose, BBO# 239400
Sasson, Turnbull, Ryan and House
100 Main Street, 3rd Floor
Northampton, MA 01060
(413)586-4800
lryan@strhlaw.com
dhoose@strhlaw.com

Brendan J. Noonan, BBO# 688919
Law Offices of Gerald J. Noonan
555 Pleasant Street
Brockton, MA 02301
(508)588-0422
Bnoonan393@gmail.com

Respectfully submitted,

DEFENDANTS, GARVIN MCHALE, KEVIN SMITH, CHRISTOPHER SIMPSON,

By their attorneys,

Henry C. Luthin
Corporation Counsel

/s/ Nicole M. O'Connor
Nicole M. O'Connor (BBO#675535)
Senior Assistant Corporation Counsel
Erika P. Reis (BBO#669930)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4039 (O'Connor)
(617) 635-4031 (Reis)
Nicole.OConnor@boston.gov
Erika.Reis@boston.gov

## **CERTIFICATE OF SERVICE**

   I hereby certify that on this day, a copy of this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


Date:  August 25, 2021                 /s/ Nicole M. O'Connor
                                   Nicole M. O'Connor